UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 3: 11-11-DCR |
| | ) | and |
| V. | ) | Civil Action No. 3: 13-7326-DCR |
| | ) | |
| JOSE ANTONIO GONZALEZ-MEJIA, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Jose Antonio Gonzalez-Mejia's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 37] The defendant contends that this relief is appropriate because his attorney was ineffective for failing to argue for a departure from his guideline range under the Department of Justice's "fast-track" program during plea negotiations and at the time of his sentencing hearing. Additionally, he asserts that his attorney provided ineffective representation by failing to object to his criminal history as outlined in his Presentence Investigation Report ("PSR").

Having fully reviewed this matter, the Court finds both of the defendant's arguments to be without merit. Additionally, Gonzalez-Mejia waived the right to challenge his guilty plea, conviction or sentence under 28 U.S.C. § 2255. As a result, the defendant's motion will

-1-

be denied.  Further, the Court declines to issue a Certificate of Appealability regarding either claim raised in the defendant's motion.

## I.

On August 4, 2005, state police were called to investigate a possible sexual assault in rural Henry County, Kentucky.  The victim led the first arriving officer to an abandoned house where approximately fifteen Hispanic individuals were located.  Through an interpreter, the victim stated that she had been left at the residence while others went to work in the tobacco fields.  She stated that "Antonio" – later identified as Defendant Jose Antonio Gonzalez-Mejia – came back to the residence and began making sexual advances toward her. The victim indicated that she attempted to flee from Antonio, but was dragged by her hair back into the residence and forced her to have sex with him.

The victim further explained that, during the assault, she was dragged onto a couch where the defendant placed his knee on her chest and used his hands to strangle her. Additionally, Gonzalez-Mejia verbally threatened the victim until she complied with his demands.  The victim indicated that the defendant was "always intoxicated" and that he had been making sexual advances toward her since the two had entered the United States illegally.  Evidence at the scene of the investigation was consistent with the victim's version of the events.  Additionally, a vaginal swab subsequently taken from the victim was positive for the defendant's semen.

Gonzalez-Mejia was subsequently convicted of second degree rape in the Henry Circuit Court. On July 20, 2006, he was sentenced to five years' imprisonment.[1] After serving only three years in custody, Gonzalez-Mejia was deported from the United States to Mexico on October 28, 2008. However, within two years, he had again returned illegally.

On August 31, 2010, Gonzalez-Mejia was convicted in the Boone District Court of operating a motor vehicle under the influence of alcohol. Regarding this conviction, the PSR indicates that the Boone County Sheriff's Office responded to a complaint of a reckless – possibly drunk – driver in Interstate 75 in northern Kentucky. At the time the vehicle was stopped, the investigating officer detected the odor of alcohol. The defendant/driver could barely speak, had bloodshot eyes, and could barely keep his eyes open. When asked to exit the vehicle, Gonzalez-Mejia attempted to comply, but fell to the ground and had to be helped to his feet. The defendant used a false name and later failed to appear for a court hearing.

Gonzalez-Mejia again encountered state authorities in 2011. On July 17, 2011, a state police trooper observed the defendant's vehicle run off the side of the roadway in Carroll County, Kentucky. During pursuit, Gonzalez-Mejia stopped the vehicle and attempted to flee on foot. However, he was caught by the arresting officer. According to information summarized in the PSR, "[t]he defendant was observed to smell of the odor of alcohol beverage and could hardly talk due to extreme intoxication." [*Id*. p. 8, ¶ 29] Again, the

---

[1]     Defendant Gonzalez-Mejia is a citizen of Mexico. At all times relevant to this action, he was present in the United States illegally. Information regarding his prior convictions is taken from the defendant's Presentence Investigation Report ("PSR"). [Record No. 28, pp. 6-7, ¶ 27] The defendant did not object to this information prior to, or at the time of, his sentencing hearing.

defendant provided the arresting officer with a false name and false date of birth. On this occasion, however, he was not released following the traffic stop and arrest.

On July 26, 2011, officials with the Bureau of Immigrations and Custom Enforcement Office in Louisville, Kentucky, took custody of the defendant and determined his true identity. [Record No. 1-1] On August 11, 2011, a federal grand jury returned a one-count indictment, charging Gonzalez-Mejia with illegally entering the United States following a conviction for an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and (b)(2). [Record No. 8; Indictment] After initially entering a not guilty plea to the charge, the defendant moved the Court to be re-arraigned for purposes of entering a guilty plea. The defendant's motion for re-arraignment was filed on September 16, 2011 – fifty-two days after entering federal custody and 36 days after indictment.

### A.    The Change of Plea Hearing

The change of plea hearing was held on September 20, 2011. The transcript of the hearing reflects that, after being placed under oath, Gonzalez-Mejia confirmed that he had engaged in lengthy discussions regarding his case with his court-appointed attorney with the assistance of a Spanish-speaking interpreter and that he fully understood the charge filed against him. [Record No. 29; Transcript of 9/20/11 Hearing, pp. 5-6] Additionally, the defendant acknowledged that he had reviewed the written Plea Agreement and understood its terms and conditions. [*Id.*, p. 7] The Assistant United States Attorney then reviewed the Plea Agreement and Gonzalez-Mejia again confirmed his understanding of all parts of the document. [*Id.*, p. 7-11]

Regarding the parties' recommendations concerning application of the United States Sentencing Guidelines ("USSG"), the Assistant United States Attorney ("AUSA") explained the following:

> And in paragraph 5(c), the base offense is eight. And then in paragraph 5(d), there's a change and that is that you increase the offense level by either eight or 16 levels for his conviction for the felony offense or second degree rape depending upon whether the second degree rape conviction is a crime of violence. Initially I had it where we were agreeing that it was and Ms. Walton has asked me to leave that issue open because of a certain issue with the conviction.

[Id., p. 9]   Following review by the AUSA, the Court confirmed that the defendant understood that, while the guideline issue was unresolved, it would make the final determination at sentencing regarding whether his base offense level would be enhanced by eight or 16 levels due to the second degree rape conviction.

Additionally, the following exchange occurred with the defendant's attorney regarding his offense level enhancement due to the defendant's conviction for second degree rape.

> THE COURT: All right. Now, again, I want to go through this change to make sure that I fully understand what the parties are recommending. Of course, this is a non[-]binding plea agreement.
>
> MS. WALTON: Yes, sir.
>
> THE COURT: But one of the recommendations that has been made deals with one of the enhancements that may apply to the offense level calculations, and it concerns whether the defendant's conviction for second degree rape, which is admitted in the factual statement, would result in an increase in the offense level by either eight levels or by 16 levels, and that will depend upon whether that conviction is classified as a crime of violence under the guideline section. Is that a good summary of what you're recommending?

MS. WALTON: Yes, sir, and I don't know – I guess now is not the time. If it were just a very clear-cut second degree rape conviction, I would not be asking that. So there is a reason why. You would probably want me to hold off on that.

THE COURT: Well, of course, I don't have any information about the defendant's criminal history and I understand that you want to preserve any argument you may have on that. I do understand your position, but I just want to make sure I understand what the parties are recommending to the Court at this time.

[Id., pp. 10-11]

During this hearing, the Court also: (i) confirmed that no other promises or threats had been made to induce the defendant's guilty plea; (ii) confirmed the non-binding nature of the parties' recommendations; (ii) again advised the defendant of the statutory penalties related to the count charged in the indictment as well as the penalties associated with any future violation of the conditions of supervised release; (iii) confirmed that the defendant was aware of the immigration consequences of his guilty plea; (iv) reviewed the manner in which the defendant's sentencing guideline range would be calculated under the USSGs; (v) explained the statutory factors that would be considered by the Court in imposing the ultimate sentence in the case; (vi) explained the consequences of the waiver provisions contained in the defendant's written Plea Agreement; and (vii) summarized the trial-related rights Gonzalez-Mejia would be waiving by entering a guilty plea. [*Id.*, pp. 12-19]

The following exchange occurred between the Court and the defendant regarding the waiver provisions of the Plea Agreement:

THE COURT: And, Mr. Gonzalez-Mejia, there's some waiver language that's contained in your plea agreement. It's not unusual to have this language in a plea agreement, but any time it's present I need to review it with you.

And in your case, the language is in paragraph 8. That paragraph indicates that you are waiving the right to appeal the guilty plea and the conviction in the case. And you are also waiving the right to appeal the sentence in the case unless the sentence were to be greater than the high end of your guideline range. And under those circumstances, if the Court were to vary from your guideline range and impose a higher sentence, you would be able to appeal to the United States Court of Appeals for the Sixth Circuit.

And let me stop there and make sure that you understand that you are waiving those rights as I've just gone through those with you.

THE DEFENDANT: Yes.

THE COURT: All right. So you understand that in some circumstances you would be able to appeal your sentence if it were greater than your guideline range, but you would not be able to file a separate lawsuit, sometimes called a habeas proceeding or a habeas motion, you wouldn't be able to file a separate lawsuit to challenge either your guilty plea or the conviction or the sentence in the case. You understand that you're waiving that right?

THE DEFENDANT: Yes.

[*Id*., pp. 16-17]

Thus, as a result of the defendant's desire to appeal any sentence which might be imposed in excess of his guideline range, the waiver provisions of the Plea Agreement was conditional. After being apprised of all rights he was surrendering as part of the Rule 11 plea colloquy, Gonzalez-Mejia acknowledged the factual basis for his guilty plea, the nature of his prior felony conviction in the Henry Circuit Court, and the date of his deportation from the United States. [*Id*., p. 20-22]

## B.     The Presentence Investigation Report

The PSR was disclosed to the parties on December 2, 2011, with the sentencing hearing scheduled for January 10, 2012. [Record Nos. 19, 28]  Based on the defendant's second-degree rape conviction, a 16 level enhancement was applied to Gonzalez-Mejia's Base Offense Level in the PSR.  [Record No. 28; PSR, p. 5]  The defendant was assigned criminal history points for: (i)  a 2004 conviction for operating a motor vehicle under the influence of drugs or alcohol (1 point); (ii) a 2005 conviction for second degree rape (3 points); (iii) a 2010 conviction for operating a motor vehicle under the influence of drugs or alcohol (1 point); and (iv) a 2011 conviction for operating a motor vehicle under the influence of drugs or alcohol (1 point).  Two additional points were added to Gonzalez-Mejia's score under USSG § 4A1.1(d) because, at the time of his federal offense, the defendant was a sex offender under conditional discharge from the Henry Circuit Court. [*Id.*, p. 6] The Total Offense Level of 21, combined with Criminal History Category IV, produced a guideline range of imprisonment of 57 to 71 months.  [*Id.*, p. 12]

Gonzalez-Mejia's attorney did not object to the guideline calculations.  Similarly, she did not argue in favor of a reduction of the defendant's guideline range under the Department of Justice's "fast-track" disposition program which had not been adopted in the Eastern District of Kentucky at the time of the defendant's guilty plea and sentencing hearing.[2]

---

[2]      Section 5K3.1 provides:

**Early Disposition Programs** **(Policy Statement)**

Upon motion of the Government, the court may depart downward not more than **4** levels

Following allocation by the parties, the Court imposed a term of incarceration of 71 months, followed by a term of supervised release of three years. [Record No. 30; Sentencing Hearing Transcript, p. 11]

In imposing the sentence, the Court explained that a higher sentence might be appropriate due to the nature of the defendant's criminal history and the danger to the public he presented due to frequent alcohol abuse.

> When I look at the nature of the defendant's criminal history, it's very serious, and the parties have acknowledged that. And while Mr. Gonzalez-Mejia indicates that he didn't understand that it was all that serious to return to the country, it is a felony offense to do so and it is very serious, especially in circumstances such as this where an individual has a very serious prior felony conviction. That's reflected in his guideline score.
>
> The defendant has a problem with alcohol, and when he uses and abuses alcohol, he tends to commit other offenses, such as the rape offense that results in the increased offense level calculation and also criminal history points.
>
> It is admirable that the defendant has indicated he does not plan to drink further. I hope that's the case. If a person has a problem with alcohol, sometimes it's easy to go back into bad habits, so I'm very hopeful that he will avoid alcohol in the future, but I also understand, being realistic, that sometimes a person with an alcohol problem will continue to drink in the future if there are further obstacles in the person's path.

[*Id.*, p. 9-10]

In addition to the nature of the defendant's prior criminal offenses and his history of alcohol abuse, the Court considered the seriousness of the offense of conviction and the need

---

pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

USSG § 5K3.1 (2011).

to provide general and specific deterrence in sentencing the defendant to a term of 71 months.  And while the Court considered a more lengthy period of incarceration, the sentence was limited to 71 months due to the need to avoid sentencing disparities and due to "the fact that counsel [for Defendant Gonzalez-Mejia was] . . . very frank and honest in this case . . . ." [Id., p. 10]

Finally, in response to the defendant's request for a shorter term of incarceration, the Court explained:

> The defendant asked the Court to given him less time and, quite frankly, that's what I'm doing, less time than may be otherwise indicated in a case such as this based upon the nature of the criminal history.  The convictions result in a criminal history score, but the Court can also look at the nature of the criminal history in determining where within the guidelines a sentence is appropriate or whether the Court should go above and sometimes below the guidelines.

*Id.*, p. 11]

## II.

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law.  *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003).  As outlined above, Gonzalez-Mejia generally asserts that his attorney was ineffective for failing to object to his criminal history and for failing to negotiate or argue for application of a reduction to his base offense level calculation under the Department of Justice's "fast-track" program applicable to certain immigration offenders.

Claims of ineffective assistance of counsel are evaluated using the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, the defendant must first

establish "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. When evaluating an ineffectiveness claim, the Court "must indulge a strong presumption" that counsel rendered effective assistance. *Id.* at 689. The second prong of the *Strickland* inquiry is whether the defendant was prejudiced by his attorney's deficient performance. *Id.* at 687. To satisfy the prejudice requirement, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Additionally, judicial scrutiny of counsel's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

If either part of the *Strickland* test is not met, the Court's inquiry ends. *Id.* at 697. The Supreme Court has instructed that "there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Here, Gonzalez-Mejia is not entitled to relief under either prong of the *Strickland* analysis.

## A. The Defendant Had No Basis To Challenge His Criminal History Score On Appeal.

Although Gonzalez-Mejia makes a general claim that his attorney was ineffective for failing to object to his criminal history score at the time of the sentencing hearing, he fails to explain how the calculation of criminal history points was incorrect. Further, a review by the Court indicates that it was not. The defendant received one point for each of his DUI-related convictions occurring in 2004, 2010 and 2011 pursuant to USSG § 4A1.1(c). He has

not provided the Court with any information indicating that these convictions were subject to challenge for any legitimate reason. Likewise, the defendant has provided no information indicating that three points should not have been assessed for his 2005 second-degree rape conviction for which he was sentenced to a term of five years imprisonment. See USSG § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month.") Also, because Gonzalez-Mejia was subject to conditional discharge following his 2005 rape conviction at the time of his federal offense, two additional points were correctly added to his criminal history score. *See* USSG § 4A1.1(d) ("Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.").

Although Gonzalez-Mejia generally alleges that his attorney was ineffective for failing to object to his criminal history score at the time of sentencing, his does not assert that his Base Offense Level was improperly increased by 16 points as a result of his conviction for a crime of violence (*i.e.*, second-degree rape) under USSG §2L1.2(b)(1)(A)(ii). [*See* Record No. 28; PSR, ¶ 16.] A "Crime of violence" is defined as follows:

> "Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses *(including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor*, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

USSG 2L1.2(b)(1)(A)(ii), Application Note 1(B)(iii). (Emphasis added.) As outlined above, the defendant's attorney specifically reserved the right to argue for a lesser enhancement during plea negotiations. However, during the sentencing hearing, counsel properly conceded that the enhancement was properly applied.

When compared with the statute elements, information contained in the PSR about the defendant's rape conviction is conflicting. The facts outlined in the PSR clearly indicate the rape was indeed violent. However, the report also indicates that the victim was 17 years-old.[3] [*See* Record No. 28; PSR, ¶ 27.] Under Kentucky law:

> a person is guilty of rape in the second degree when:
>
> > (a) Being eighteen (18) years old or more, he engages in sexual intercourse with another person less than fourteen (14) years old; or
> > (b) He engages in sexual intercourse with another person who is mentally incapacitated.

KRS § 510.050. Further, under KRS § 510.020, a person is deemed incapable of consent if he or she is less than sixteen years-old, has an intellectual disability, suffers from a mental illness, is mentally incapacitated, or is physically helpless. Thus, a conviction for second-degree rape under KRS § 510.060 fits within the definition of a crime of violence under Application Note 1(B) of USSG § 2L1.2 (b)(1)(A)(ii).

Under the categorical approach that would be applied in determining whether an offense would be deemed a "violent felony" (as opposed to a "crime of violence"), the Court

---

[3] The defendant's conviction is final. Therefore, the Court does not speculate whether the conviction for second degree rape reflects the victim's correct age (*i.e.*, less than fourteen years-old) or whether the victim was mentally incapacitated. Likewise, the Court does not speculate regarding whether the defendant's conviction was the result of a plea to a lesser charge.

would not look beyond the statutory elements in reaching this conclusion under the guideline section in issue. *See generally*, *Taylor v. United States*, 495 U.S. 575 (1990); *United States v. Campbell*, 256 F.3d 381, 395-96 (6th Cir. 2001). *See also United States v. Hargrove*, 416 F.3d 486, 495 (6th Cir. 2005) ("sexual offenses involving victims who were minors amount to crimes of violence"). *But see United States v. Evans*, 2010 U.S. App. LEXIS 8790 (6th Cir. April 28, 2010) (remanding conviction for re-sentencing to allow district court to consider whether rape of a thirteen year-old female by a twenty-three year-old male constitutes a violent felony under USSG § 4B1.2 and 18 U.S.C. § 924(e), applying the modified categorical approach).

The definition of "crime of violence" under Application Note 1(B)(iii) to USSG § 2L1.2(b)(1)(A)(ii) is not identical to the term "violent felony" as defined in 18 U.S.C. § 924(e)(2)(B) and USSG § 4B1.2. Under the Armed Career Criminal Act, the term "violent felony" means:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
>
> > (i) has as element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; . . .

18 U.S.C. § 924(e)(2)(B).

Further, Application Note 1 to USSG § 4B1.2 specifically lists "murder, manslaughter, kidnapping, aggravated assault, *forceable sexual offenses*, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling" as specific offenses that fit within the definition of "crimes of violence." (Emphasis added.) Unlike the Application Note for USSG § 2L1.2, the Application Note for USSG § 4B1.2 does not contain the parenthetical to specifically include offenses where the victim cannot give consent due to his or her age or due to a mental or physical disability. Thus, cases interpreting the "otherwise clause" are not necessary applicable in the context of cases involving USSG § 2L1.2 (b)(1)(A)(ii). In short, physical force is not required under USSG 2L1.2(b)(1)(A)(ii).

**B.**    **The Defendant Had No Basis To Argue That He Was Entitled To A Reduction From His Guideline Range Based Under The Fast Track Program.**

In 2003, United States Attorney General John Ashcroft issued a memorandum to all United States Attorneys captioned, "Department Principles for Implementing an Expedited Disposition or "Fast-Track" Prosecution Program in a District." The program was implemented under Section 401(m)(2)(B) of the 2003 Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act ("PROTECT Act"). As outlined in the memorandum, the program was "reserved for exceptional circumstances, such as where the resources of a district would otherwise be significantly strained by the large volume of a particular category of cases. Such programs are not to be used simply to avoid the ordinary application of the Guidelines to a particular class of cases." *See* Memorandum from

Attorney General John Ashcroft, *Department Principles for Implementing an Expedited Disposition or "Fast-Track" Prosecution Program in a District* (Sept. 22, 2003), available at http://10.173.2.12/jmd/lib/memo3.pdf.  It cannot be seriously argued that the Eastern District of Kentucky has ever experienced a large volume of immigration-related cases that would justify fast-track treatment under the original program announced by Attorney General Ashcroft.

To obtain approval from the Attorney General to implement a "fast-track" program, the United States Attorney within a particular district was originally required to submit a proposal that demonstrated:

(A)     (1) the district confronts an exceptionally large number of a specific class of offenses within the district, and failure to handle such cases on an expedited or "fast-track" basis would significantly strain prosecutorial and judicial resources available in the district; or

(2) the district confronts some other exceptional local circumstances with respect to a specific class of cases that justifies expedited disposition of such cases;

(B)     declination of such cases in favor of state prosecution is either unavailable or clearly unwarranted;

(C)     the specific class of cases consists of ones that are highly repetitive and present substantially similar fact scenario; and

(D)     the cases do not involve an offense that has been designated by the Attorney General as a "crime of violence."  See 28 U.S.C. § 28.2 (listing offenses designated by the Attorney General as "crimes of violence" for purposes of the DNA collection provisions of the USA PATRIOT Act.

-16-

*Id.* Further, any program submitted to the Attorney General for approval was required to include a requirement that the defendant agree to an expedited disposition of the offense covered by the fast-track program and also agree to waive appeal.[4]

Like the Eastern District of Kentucky, most district did not meet the requirements for the fast-track program. In fact, through the end of 2009, only districts in Arizona, California, Georgia, Idaho, Nebraska, New Mexico, New York, Oregon, Puerto Rico, Texas, Utah, and Washington had received approval for early disposition programs for certain classes of immigration offenses. (Although not included in every district, the offenses covered by the programs in these districts included: (i) illegal reentry after deportation; (ii) transportation or harboring of aliens; (iii) alien baby/child smuggling and "bringing in"; (iv) drug cases arising along the border; (v) drug backpacking; (vi) drug courier cases arising out of John F. Kennedy International Airport; (vii) aggravated identity theft cases; (viii) identification document fraud/identity theft cases; and (ix) illegal identification documents at port of entry. [*See* Memorandum from Deputy Attorney General David W. Ogden, *Authorization for Certain Early Disposition Programs* (May 29, 2009), available at: http://www.fd.org/docs/select topics—sentencing/doj-memorandum-for-all-united-states-attorneys-from-david-w-ogden-deputy-attorney-general-subject-authorization-for-early-disposition-programs.pdf.] Deputy Attorney General Ogden's Memorandum to United States Attorneys contained a notice that fast-track programs would not be re-authorized in

---

[4]     While the defendant was also required to waive the right to challenge his or her conviction under 28 U.S.C. § 2255, he or she could reserve the right to file a collateral action to challenge ineffective assistance of counsel.

several districts.  Further, all districts were reminded that continuing re-approval would depend on "demonstrable results establishing that the authorized early disposition program is permitting the prosecution of a significantly larger number of defendant than occurred in the absence of the early disposition program or than would occur if the program were discontinued." [*Id.*]

In January 2012, the fast-track program was significantly expanded under Attorney General Eric Holder.  Rather than limit application of the program to districts which were able to demonstrate a savings of significant and scarce resources in a limited class of specific, identified offenses, Deputy Attorney General James M. Cole announced that the Department of Justice's fast-track program was being revised to "establish uniform, baseline eligibility requirements for any defendant who qualifies for fast-track treatment, regardless of where that defendant is prosecuted." [*See* Memorandum from Deputy Attorney General James M. Cole, *Department Policy on Early Disposition or "Fast-Track" Programs* (Jan. 31, 2012) available at: http://www.justice.gov/dag/fast-track-program.pdf. ("Cole Memo")]

Notwithstanding this expansion far beyond its original limits, the Department of Justice identified several eligibility requirements for defendants prosecuted for felony illegal reentry under 8 U.S.C. § 1326.  In each district, the United States Attorney retained the discretion to limit or deny a defendant's participation in the fast-track program based on prior violent felony convictions for offenses which included forcible sex offenses and child-sex offenses.  Additionally, to qualify for fast-track treatment, a defendant was required to enter into a written plea agreement within thirty days of being taken into custody on federal

criminal charges. And his or her plea agreement was required to include, *inter alia*, a waiver of appellate rights as well as the right to collaterally attack the guilty plea, conviction and sentence (excluding claims of ineffective assistance of counsel). [*Id.*]

As noted previously, Gonzalez-Mejia contends his sentence should be reduced because the Department of Justice's "fast-track" early disposition program. While this program was not available at the time of the defendant's conviction and sentencing hearing, it has now been implemented in this district. However, the defendant would not have qualified under the "fast-track" program (at the time of his guilty plea, sentencing, or now) because of the limited nature of his waiver of appellate rights.

As outlined above, fast-track programs were initially established in district courts primarily in the southwestern United States to accommodate the large number of immigration cases. These programs offer defendants some form of sentence reduction in exchange for the waiver of certain procedural rights. *United States v. Rodriguez*, 523 F.3d 519, 526-27 (5th Cir. 2008). If a defendant meets the eligibility requirements for a fast-track disposition and accepts the terms of the program, the Government may move for a downward departure under § 5K3.1 of the Sentencing Guidelines. *See id* at 527; *see also* Cole Memo. However, even if the government chooses to move for a reduction of the defendant's non-binding guideline range under the section, the Court is not obligated to grant the motion.

Here, it is undisputed that Gonzalez-Mejia's criminal charge was not handled as a fast-track disposition and he did not receive the benefit of a reduction to his base offense level under USSG § 5K3.1. And while Gonzalez-Mejia has not identified the particular

constitutional right[5] implicated by this argument, district courts faced with similar claims generally treat them as equal protection challenges to the disparity between the sentences of defendants sentenced under a fast-track program and those who were not. *See, e.g.*, *United States v. Lumbreras-Amaro*, 627 F. Supp. 2d 752, 761-62 (S.D. Tex. 2008). However, such arguments are not successful because any disparity in sentencing between fast-track and non-fast-track jurisdictions is a function of Congressional policy. *See United States v. Gomez-Herrera*, 523 F.3d 554, 562 (5th Cir. 2008). Thus, the resulting disparity is not "unwarranted" for purposes of 18 U.S.C. § 3553(a), and a district court does not abuse its discretion in refusing to deviate from the Guidelines on the basis of sentencing disparity resulting from fast-track programs. *See id.* at 563 and n.4. Moreover, any equal protection claim would lack merit because it implicates neither a suspect class nor a fundamental right. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 808 (5th Cir. 2008) (per curiam).

Under the undisputed facts of this case, Gonzalez cannot prevail on an equal protection claim because he cannot show that he is similarly-situated to defendants convicted and sentenced under a fast-track program. He neither pleaded guilty within 30 days of his arrest for illegal re-entry, nor unconditionally waived his right to file a direct appeal of his sentence. Instead, his waiver was limited. As outlined in his written Plea Agreement, "[i]f

---

[5]     A defendant alleging a constitutional violation must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings to obtain relief under 28 U.S.C. § 2255. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). When alleging a non-constitutional error, a defendant must prove the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S.Ct. 468, 471 (1962)).

the length of the term of imprisonment exceed[ed] the advisory sentencing guideline range as determined by the Court at sentencing[,]" the defendant retained the right to file a direct appeal. (*Compare* Cole Memorandum, p. 3-4, *with* Record No. 16; PSR at ¶ 8.) Thus, the defendant has not shown that he met the eligibility requirements for fast-track disposition. In light of the foregoing, Gonzalez-Mejia could not prevail on a fast-track-based equal protection claim. *See Lopez-Velasquez*, 526 F.3d at 808.

There is one other matter which effectively moots Gonzalez-Mejia's argument concerning a fast-track reduction. As noted above, while a district court *may* depart from an applicable guideline range based on the availability of fast-track procedures, it is not required to do so. *United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012). The record clearly reflects that a term of imprisonment of 71 months was the *minimum* sentence the Court believed was appropriate in light of the nature of the defendant's prior crimes and danger he presented as a result of long-standing alcohol abuse. In short, a departure even under the Department of Justice's subsequently-expanded "fast-track" program was not warranted for Defendant Gonzalez-Mejia.

### C. The Waiver Provision of the Defendant's Plea Agreement Precludes His Motion Under 28 U.S.C. § 2255.

"Solemn declarations in open court carry a strong presumption of verity, and the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). As outlined above, the Defendant fully

understood all relevant parts of his written Plea Agreement, including the paragraph in which he waive the right to collaterally challenge his guilty plea, conviction and sentence. Under such circumstances, the waiver provisions will be enforced unless it is shown that it was the product of ineffective assistance. Compare *United States v. Thompson*, 2009 WL 1917073, at *1 (W.D. Ky. July 1, 2009) ("A valid plea agreement which contains a waiver of the right to seek collateral relief will bar such action, including a § 2255 motion attacking a conviction, sentence, or plea." *See Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001)), with *United States v. Harding*, 2008 WL 4073393, at *20 (E.D.Ky. Aug. 29, 2008). Thus, unless it is directly related to the plea agreement, a claim of ineffective assistance of counsel may be waived.[6]

Here, however, the defendant cannot demonstrate any error related to plea negotiations or the plea agreement. While the defendant claims that his attorney was ineffective, as outlined above, he has not demonstrated any error. Because there was some question at the time Gonzalez-Mejia entered his guilty plea about his rape conviction, it was not erroneous to reserve this issue for further argument. If successful, the defendant's base offense level would have been reduced significantly (*i.e.*, eight levels). And while reservation of certain appellate rights effectively prevented the defendant from arguing for "fast-track" treatment (which could result in up to a four-level reduction from the defendant's

---

[6]     The Sixth Circuit has held that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d. 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted). Gonzalez-Mejia's argument that his attorney "failed to object to his criminal history score" would be waived under rule.

Total Offense Level), he stood more to lose from abandoning all of his appellate rights than in hoping that the Court would reduce his Total Offense Level under a program that had not been adopted in the Eastern District of Kentucky. Due to the nature of his criminal history, a significant likelihood existed at the time of his guilty plea that Gonzalez-Mejia would be sentenced to a term of incarceration greater than 71 months. Thus, the defendant's ability to appeal a sentence above his guideline range was significant. In short, the defendant's attorney was not ineffective in plea negotiations or during the sentencing hearing and he did not suffer any prejudice as a result of her actions.

## III.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When a district court's denial is based on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And when the district court's denial is based on a procedural ruling, the petitioner must demonstrate that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurist of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* Gonzalez-Mejia cannot meet this burden. Under the facts presented, a reasonable jurist would not find the denial of the defendant's motion procedurally incorrect. Likewise, reasonable jurists would not find it debatable whether the defendant's motion states a valid claim of the denial

of a constitutional right. Further, given that the motion, files, and records of the case conclusively show that the prisoner is not entitled to the relief requested, there is no need for an evidentiary hearing.

## IV.

Defendant Gonzalez-Mejia's is not entitled to relief under 28 U.S.C. § 2255. Likewise, he is not entitled to issuance of a Certificate of Appealability on any issue. Accordingly, it is hereby

**ORDERED** as follows:

2. The defendant/movant's motion [Record No. 37] is **DENIED** and his claims are **DISMISSED** with prejudice;

3. A Certificate of Appealability shall not issue because the defendant/movant has not made a substantial showing of the denial of any substantive Constitutional right;

4. Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent/plaintiff.

This 27th day of December, 2013.



Signed By:

*Danny C. Reeves* DCR

**United States District Judge**